507 F.2d 1093
 Hammy MARTIN, Plaintiff-Appellant-Appellee,
v.
M/V WAR ADMIRAL in rem, et al., Defendants.
DEEP WATER OPERATORS, INC., et al., Defendants Third-Party
Plaintiffs-Appellees-Appellants,
v.
BAYOU VISTA MACHINE WORKS, INC., et al., Third-Party
Defendants-Appellees, READING & BATES OFFSHORE DRILLING CO.,
Third-Party Defendant-Appellee-Appellant, Employers
Liability Assurance Corp., Intervenor-Appellee.
 No. 74-1690.
 United States Court of Appeals, Fifth Circuit.
 Feb. 10, 1975.
 
 C. Kenneth Deshotel, William A. Brinkhaus, Opelousas, La., for plaintiff-appellant-appellee.
 James E. Diaz, Lafayette, La., for Signal Oil.
 W. Gerald Gaudet, Lafayette, La., for Deep Water Operators.
 W. Eugene Davis, J. Louis Gibbens, New Iberia, La., for Reading & Bates Offshore Drilling.
 Wood Brown, III, Machale A. Miller, New Orleans, La., for Bayou Vista & Employers Liability Corp.
 Joseph Wilson, Morgan City, La., for appellees.
 Appeals from the United States District Court for the Western District of Louisiana.
 Before BROWN, Chief Judge, and COLEMAN and DYER, Circuit Judges.
 DYER, Circuit Judge:
 
 
 1
 Martin, a roughneck at an offshore drilling rig in the Gulf of Mexico, sustained injuries while returning to port from his worksite aboard the crewboat WAR ADMIRAL. He sued, and following a bench trial, was awarded damages based on the court's finding that the negligence of Deep Water Operators, Inc. (Deep Water), the operator of the WAR ADMIRAL, had been a proximate cause of the accident. The judgment was reduced by 35% Due to Martin's contributory negligence, with the lion's share of the net award going to Employers Liability Assurance Corporation, Ltd. (Employers), the workmen's compensation insurer of Martin's employer, as indemnification for benefits advanced to Martin.
 
 
 2
 The main issues on appeal are Martin's claims that his judgment was erroneously small because of the court's refusal to consider evidence of psychological disability in awarding damages, and that, as his action created the fund from which Employers recouped its compensation payments, the insurer should be required to share the cost of Martin's attorney's fees. Deep Water in turn appeals from the finding of its negligence underlying the judgment. We affirm the district court in all respects.
 
 
 3
 At approximately 2:30 P.M. on January 9, 1969, Martin boarded the crewboat WAR ADMIRAL to begin the four and one-half hour journey back to port from the offshore rig tender on which he worked. About halfway, he felt the urgent need to use the ship's 'head' located in the rear of the passenger cabin. The passageway to the rear was partially obstructed by luggage brought on board by other passengers, and as Martin was stepping over a duffel bag in the aisle, he was knocked off balance by the force of a wave striking the ship and fell backwards striking his hip on a footlocker. Although he was able to continue to the head and return to his seat without apparent difficulty, the injury had become so painful by the time the vessel docked that Martin had to be assisted to his car and driven to a local medical clinic by a co-worker.
 
 
 4
 At the clinci, Martin was treated by his personal physician, Dr. Deshotels, who initially prescribed conservative care to minimize swelling and pain. Dr. Deshotels later requested the consultation of orthopedist Dr. Bordelon, who performed surgery on August 12, 1969, to remove an inflamed bursal sac from Martin's hip and to explore his knee for a possible popliteral cyst, which was not found. After a number of follow-up visits, Dr. Bordelon discharged Martin on March 16, 1970, stating in his discharge report that:This patient has apparently made a recovery from the injury which was previously noted. At the present time I find no evidence of physical impairment from an objective orthopaedic standpoint which would prevent the performance of normal activity.
 
 
 5
 This medical conclusion was supported by that of Dr. Saer, who examined Martin on March 26, 1970, and found that 'on the basis of his physical status there was nothing wrong which would prevent him doing normal activities if he wished to do so.'
 
 
 6
 Martin, however, contended that the accident had lift him totally and permanently disabled. To support his claim he introduced the depositions of two psychiatrists, Dr. Cloyd and Dr. Blackburn, who testified in substance that, because of Martin's psychological makeup, he continued to experience severe pain as a result of his injuries even though it might not be justified by his physical ailments. While both admitted that their conclusions were based on what Martin had related to them about his condition, coupled with their observation of his demeanor, they also stated their opinion that he was not consciously malingering.
 
 
 7
 The trial court awarded damages for lost wages and medical expenses up to the date of Dr. Bordelon's discharge report of March 16, 1970, plus an allowance for pain and suffering, but denied any recovery for future disability. On this appeal, Martin argues, that in light of what he terms the 'uncontradicted' psychiatric evidence of disability, this denial was erroneous. Seizing on a statement in the court's opinion that it could not 'support a reward for disability based purely on plaintiff's past and present psychological problems,' he also suggests that the reason for the court's refusal to award disability damages was its erroneous legal view that only pain with a demonstrable organic basis is compensable. See, e.g., Hayes v. Celebrezze, 5 Cir. 1963, 311 F.2d 648, 654.
 
 
 8
 We cannot agree. Taken as a whole, the opinion makes it clear that the reason disability damages were denied was the court's factual finding that Martin's afflictions attributable to the accident, from either physical or psychological sources, were not disabling. Indeed, in the opening sentences of its consideration of the damage issue the district court stated:
 
 
 9
 In his complaint the plaintiff claims he has been totally and permanently disabled as a result of this fall in January of 1969. In determining the award of damages in this case, the Court has viewed with careful scrutiny all pertinent medical evidence. We are unable to conclude the plaintiff is manently.
 
 
 10
 Nor can we agree that the court's conclusion is without substantial support in the record. In arguing that his psychological disability had been established by uncontradicted psychiatric testimony, Martin overlooks the fact that the key consideration is not the cause of pain, but its effect. To be disabling, it must at a minimum impair the plaintiff's ability to engage in normal activity. See Gaultney v. Weinberger, 5 Cir. 1974, 505 F.2d 943. Here, Drs. Bordelon and Saer specifically testified that Martin was able to engage in normal physical activity. Moreover, as specifically noted by the district court, these findings were based on clinical examinations of Martin's injuries, while the contrary opinions of Drs. Cloyd and Blackburn were rendered primarily from Martin's subjective rendition of his complaints. In sum, there is substantial evidence to support the district court's conclusion that Martin was not disabled, and it must be affirmed. McAllister v. United States, 1954, 348 U.S. 19, 20, 75 S.Ct. 6, 99 L.Ed. 20.[1]
 
 
 11
 Martin's second contention is that he should be awarded attorney's fees out of the compensation payments recouped by Employers from his judgment. Citing the insurer's active opposition to any recovery, he relies on Chouest v. A & P Bost Rentals, Inc., 5 Cir. 1973, 472 F.2d 1026, cert. denied, 412 U.S. 949, 93 S.Ct. 3012, 37 L.Ed.2d 1002, as establishing a legal basis for the award of such fees. We decline to reach this issue because this claim for relief was not presented to the district court and will not be considered for the first time on appeal. Excavators and Erectors, Inc. v. Bullard Engineers, Inc., 5 Cir. 1973, 489 F.2d 318, 320; Kottemann v. Goodway, Inc., 5 Cir. 1971, 439 F.2d 766, 767.
 
 
 12
 Finally, we need not be detained by Deep Water's argument that the district court was clearly erroneous in finding it liable for Martin's injuries. The skipper of the WAR ADMIRAL himself testified that it was the duty of the crew to tell passengers to remove their luggage from the aisles; there is also adequate support in the record for the court's finding that failure to observe this duty was a proximate cause of the accident.[2]
 
 
 13
 Affirmed.
 
 
 
 [1]
 Martin also objects to the court's decision to limit recovery of medical expenses to those incurred prior to March 16, 1970. In light of Dr. Bordelon's discharge report of that date, which declared Martin to be medically recovered from his injuries, this conclusion as well cannot be deemed clearly erroneous. McAllister, supra
 
 
 [2]
 Because we affirm the district court, we need not discuss any of the protective appeals filed herein